UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MENGXIA WANG, et al.,

              Plaintiffs,

      v.

JOSEPH B. EDLOW, et al.,

              Defendants.

Case No.  25-cv-10689-SVK

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 14

## I.    INTRODUCTION AND BACKGROUND

On December 15, 2025, 19 Plaintiffs filed this action against Joseph B. Edlow in his official capacity as Director of United States Citizenship and Immigration Services ("USCIS") and USCIS itself (collectively, Defendants or the "Government."). Dkt. 1. Plaintiffs amended their complaint on January 4, 2026. Dkt. 9 ("FAC"). They challenge the Government's failure to timely adjudicate their I-485 Applications to Register Permanent Residence or Adjust Status ("I-485 Application(s)"). *Id.*, ¶¶ 1-20. Plaintiffs are citizens of different countries and each has their own I-485 Application pending, filed on different dates. *See id.* USCIS received the I-485 Applications as early as November 9, 2020 and as late as December 13, 2024. *Id.*, ¶¶ 1-19, 30. As of the date of this Order, Plaintiffs' I-485 Applications have been pending for between 65 months and 16 months. *See id.* Each of the I-485 Applications is based on a Plaintiff's approved asylee status.[1] On February 27, 2026, the Government filed a Motion to Dismiss (the "Motion"), which

////

---

[1] Also before the Court is the Government's Administrative Motion to File Under Seal the declaration of Devon Johnston in support of its Motion to Dismiss, certain portions of the Motion, and the Administrative Motion itself. Dkt. 15. As set forth in the accompanying sealing order, the Court **GRANTS IN PART** and **DENIES IN PART** the sealing motion. In the interest of public access to judicial records, the Court's Order herein avoids discussing the sealed information.

United States District Court
Northern District of California

is now before the Court.[2] Dkt. 14. All Parties have consented to magistrate-judge jurisdiction. Dkts. 28-29.

The Government's Motion raises four issues. First, the Government argues as a threshold matter that "the Court lacks jurisdiction to compel the adjudication of I-485 adjustment applications under the jurisdiction-stripping provision of the INA, 8 U.S.C. § 1252(a)(2)(b)(ii)." Dkt. 14 at 6, 9, 11-14. To the extent the Court disagrees, the Government argues that the Court should dismiss Plaintiffs' Due Process claims for failure to state a claim, (*id.* at 14-15), should dismiss or sever Plaintiffs from this case as improperly joined, (*id.* at 15-20), and should dismiss 16 of the Plaintiffs who reside outside this district for improper venue, (*id.* at 20-21). The Court determines that this matter may be resolved without oral argument. Civil L.R. 7-1(b). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## II.  LEGAL STANDARDS

### A.  Motions to Dismiss for Lack of Jurisdiction Under Fed. R. Civ. P. 12(b)(1)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 900 (N.D. Cal. 2020). "Federal courts are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a "facial" 12(b)(1) challenge, as is presented here, the Court assumes a plaintiff's factual allegations to be true and draws all reasonable inferences in plaintiff's favor. *Oracle Corp. v. ORG Structure Innovations LLC*, No. 11-cv-3549 SBA, 2012 WL 12951187, at *3 (N.D. Cal. Mar. 30, 2012) (citing *Doe v. See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

////

---

[2] This case was previously assigned the Honorable Yvonne Gonzalez Rogers, but was reassigned to the undersigned upon the Parties' consent to magistrate-judge jurisdiction. Dkts. 30, 32. The opposition was filed on March 5, 2026 before Judge Gonzalez Rogers, the reply was filed on March 27 before the undersigned, and a motion for leave to file a sur-reply, which the Court also addresses herein, was filed on April 2, 2026. Dkts. 21, 31, 33.

United States District Court
Northern District of California

**B.      Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022). However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

**C.      Improper Joinder Under Rule 21 and Improper Venue Under Rule 12(b)(3)**

The Government raises joinder and venue arguments that, in this case, are related. "To join together in one action, plaintiffs must meet two specific requirements: (1) the right to relief asserted by each plaintiff must arise out of or relate to the same transaction or occurrence, or series of transactions or occurrences; and (2) a question of law or fact common to all parties must arise in the action." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); Fed. R. Civ. P. 20(a)(1). "Misjoinder of parties is not a ground for dismissing an action," but "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. For example, a district court may sever plaintiffs by "dismiss[ing] all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs." *Coughlin*, 130 F.3d at 1350 (9th Cir. 1997).

Rule 12(b)(3) provides for motions to dismiss for improper venue.  Fed. R. Civ. P. 12(b)(3).  For suits where a defendant is an officer or employee of the United States, 28 U.S.C. 1391(e)(1) provides that venue is proper "in any judicial district in which … (C) the plaintiff resides."  28 U.S.C. § 1391(e)(1).  Unlike some other venue provisions, Section 1391(e)(1) provides that "venue is proper in a multi-plaintiff case if *any* plaintiff resides in the District." *MadKudu Inc. v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-02653-SVK, 2020 WL 5628968, at *8 (N.D. Cal. Sept. 14, 2020).  Thus, in this case, analysis of whether joinder is proper must precede a determination of whether venue is proper.

## III.    DISCUSSION

This Court has recently addressed whether "8 U.S.C. § 1252(a)(2)(B) strips the Court of subject matter jurisdiction over [a] case" challenging the failure of the USCIS to adjudicate certain immigration applications, including an "I-485 (Application to Register Permanent Residence or Adjust Status)."  *Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 485490, at *2 (N.D. Cal. Feb. 20, 2026).  Although *Varniab* arose on a motion for preliminary injunction, and with the "additional layer [of] the December 2, 2025 USCIS issued Policy Memorandum PM-602-0192, which placed an 'adjudicative hold' on a wide range of pending requests for immigration benefits filed by aliens from a list of certain countries," this Court also recently squarely addressed the issue as applied "to simple unreasonably delay/pace-of-adjudication claims on a motion to dismiss."  *Gao v. Mullin et al.*, No. 25-cv-01479-SVK, 2026 WL 948665, at *2-5 (N.D. Cal. Apr. 8, 2026) (quoting and analyzing *Varniab v. Edlow*, 2026 WL 485490, at *1-2, *6-8 and *9-13).  The Government here raises precisely the same argument, citing the same authorities, as it did in *Gao*.  *See* Dkt. 14 at 6, 9, 11-14.  Accordingly, the Court begins by briefly applying its reasoning from *Gao v. Mullin* to the facts of this case, before turning to the Government's remaining arguments.

////

////

////

////

4

**A.**    **8 U.S.C. § 1252(a)(2)(B)(ii) Does Not Strip this Court of Subject Matter Jurisdiction Over "Pace-of-Adjudication" Claims Because Defendants Have a Non-Discretionary Duty to Adjudicate I-485 Applications**

**1.    RELEVANT STATUTORY FRAMEWORKS**

The statutory framework analyzed by the Court in *Gao* is generally applicable here. *See Gao*, 2026 WL 948665, at *2. For ease of reference, the framework is repeated below.

**a.    Applications for Adjustment of Status Under the INA**

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes certain individuals to apply for immigrant visas or lawful permanent resident status where, *inter alia*, they have an approved asylum application. *See* 8 U.S.C. §§ 1154(a), 1158, 1159. An individual can apply to adjust their status to lawful permanent resident using Form I-485, Application to Register Permanent Residence or Adjust Status, based on a pending or approved immigrant petition and if certain threshold requirements are met. 8 U.S.C. §§ 1159(b), 1255.[3]

USCIS engages in a multi-step process when evaluating an application for adjustment of status. Section 1159(b) provides:

> The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who (1) applies for such adjustment, (2) has been physically present in the United States for at least one year after being granted asylum, (3) continues to be a refugee … (4) is not firmly resettled in any foreign country, and (5) is admissible as an immigrant at the time of examination for adjustment….

8 U.S.C. § 1159(b).

**b.    8 U.S.C. § 1252(a)(2)(B)(ii) – Denials of Discretionary Relief**

Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the Court of subject matter jurisdiction over this case. Dkt. 20. 8 U.S.C. § 1252 is entitled "Judicial review of orders of removal" and provides, in relevant part:

---

[3] The Court's decision in *Gao* dealt with 8 U.S.C. § 1255, which sets forth provisions for applications for adjustment of status for non-immigrants generally, unlike 8 U.S.C. § 1159, which is specific to those with asylee status. *See Gao*, 2026 WL 948665, at *2. This distinction does not affect the outcome of the Court's decision here.

United States District Court
Northern District of California

(a) Applicable provisions

…

(2) Matters not subject to judicial review

…

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252.[4]

### c.      The Administrative Procedures Act

As a general matter, the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.*, governs the decision-making procedures of administrative agencies.  It provides, in relevant part, that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).  Upon a finding that action is required, a "reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed …."  5. U.S.C. § 706(1).

////

---

[4] In opposition to the Government's Motion, Plaintiffs argue that Section 1252 does not apply to applications for adjustment of status under Section 1159, because Section 1159, unlike Section 1255, is not mentioned in Section 1252(a)(2)(B)(i)'s jurisdictional bar.  The Government points out, however, that its argument is based on subsection (2)(B)(**ii**) which reaches "any other decision or action … under this *subchapter* … other than the granting of relief under section 1158(a)." Dkt. 31 at 3.  The Court need not resolve this issue because, even if Section 1159 is treated by the jurisdictional bar in the same way as Section 1255, the Court nonetheless determines that it has jurisdiction over pace-of-adjudication claims for the reasons set forth below.

United States District Court
Northern District of California

United States District Court
Northern District of California

**2.    None of the Facts of this Case Warrant a Departure from *Gao***

The Court's reasoning in *Gao* is squarely applicable to this case, and the Court incorporates the reasoning on pages *3-5 of that decision here.  *Gao*, 2026 WL 948665, at *3-*5.  In sum,

> "the majority of district courts in the Ninth Circuit have refused to follow *Beshir v. Holder*, 10 F. Supp. 3d 165 (D.D.C. 2014) and other cases that have concluded that the pace of adjudication is discretionary and thus not subject to judicial review, instead holding that the government has a non-discretionary duty to adjudicate petitions for adjustment of status within a reasonable period of time and that courts have jurisdiction to review the Government's failure to do so. … Thus a failure to act on an I-485 application falls within the APA's default rule: 'With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.'"

*Gao*, 2026 WL 948665, at *3 (quoting *Varniab*, 2026 WL 485490, at *8 (quoting 5 U.S.C. § 555(b))) (cleaned up).  The Court incorporates its distinction of *Patel v. Garland*, 596 U.S. 328, 348 (2022) and *Zia v. Garland*, 112 F.4th 1194, 1200 (9th Cir. 2024) as presenting "challenges to final decisions on individual applications for immigration benefits, (*id.* at *3-4), its rejection of the Government's arguments in support of discretion "over the pace of adjudicating applications," (*id.*), its affirmative finding that 8 C.F.R. § 245.2(a)(5)(i) "establishes a 'mandatory duty to act' on Form I-485 applications," (*id.* at *4), and its detailed discussion and distinction of *Khachutorov v. Britten*, 792 F. Supp. 3d 1106 (C.D. Cal. 2025), (*id.* at *4-5), on which the Government relies.

What remains is the question of whether the facts of this case differ from those alleged in *Gao* in a way meaningful to the Section 1252(a)(2)(B)(ii) analysis.

First, this case, like *Gao* and unlike *Patel* and *Zia*, does not concern a final decision.  *See* Dkt. 9, ¶¶ 1-19 (each of the Plaintiffs' pleads that "[t]o date, the application has not been adjudicated.").  Second, the Court recognized in *Gao* and *Varniab* that the "'visa retrogression' context … ha[s] different statutory and regulatory underpinnings" and that, "[o]f note, the retrogression hold policy finds support in 8 C.F.R. § 245.2(a)(5)(ii)."  *Gao*, 2026 WL 948665, at *4 (quoting *Varniab*, 2026 WL 485490, at *8) (distinguishing *Khachutorov*, 792 F. Supp. 3d 1106). Defendants do not contend that the delay in this case is based on "visa retrogression."  *See,*

7

*generally*, Dkt. 14; *see also, generally*, Dkt. 9. [5]   Accordingly, the visa retrogression cases do not apply to this case.

Finally, the Court noted that in *Gao* that the plaintiff's application had been pending 57 or 48 months (depending in whether the time the action was stayed was counted) at the time of the Court's order.  *Gao*, 2026 WL 948665, at *5.  Some of the Plaintiffs' I-485 Applications at issue here have been pending longer, (*e.g.*, Plaintiff Gerardo Huezo's application, 65 months), while some have been pending far less long, (*e.g.*, Plaintiff Zhang's application, 16 months).  Dkt. 9, ¶¶ 7-8.  However, while the length that an application has been pending without any action may be cause for granting or denying a motion to dismiss on 12(b)(6) grounds, (*e.g., Khachutorov*, 792 F. Supp. 3d at 1115-17 (noting that "under either a Rule 12(b)(1) or a Rule 12(b)(6) approach, the Court concludes that the FAC fails to allege unreasonable agency delay" and ultimately dismissing the claim "without prejudice" because "it is possible that additional delay or refusal to adjudicate Plaintiffs' pending applications could give rise to a viable claim.")), it does not change the Court's analysis as to subject matter jurisdiction.

Accordingly, the Court's reasoning in *Gao* is applicable here.  The Court finds that it has jurisdiction to address Plaintiffs' pace-of-adjudication claims.

**3.    The Court Denies in Part as Moot Plaintiffs' Motion for Sur-Reply**

Plaintiffs argue that in reply the Government adds several new arguments regarding subject matter jurisdiction.[6] Dkt. 33 at 2-3.  Plaintiffs argue that the Government includes: "(1) an entirely new doctrinal theory that USCIS's internal prioritization, sequencing, vetting, resource allocation, and 'the process of receiving and vetting an application' are themselves affirmative 'actions' shielded by Section 1252(a)(2)(B)(ii);"  (2) "an argument that 8 U.S.C. Section 1571(b) is 'merely precatory' and cannot provide jurisdiction;"  and (3) "new factual characterizations that Plaintiffs

---

[5] The Government argues in reply that this pace-of-adjudication claim is closer to the visa retrogression context relied on by *Khachutorov* than to the policy-based delay at issue in *Varniab*. Dkt. 31 at 6-8.  After the reply and Plaintiffs' proposed sur-reply were filed in this case, the Court squarely addressed this argument in *Gao*.  *Gao*, 2026 WL 948665, at *4-5.

[6] Plaintiffs also argue that the Government introduced new joinder arguments in reply.  Dkt. 33 at 2-4.  That portion of Plaintiff's request for sur-reply is addressed in Section III.C., below.

United States District Court
Northern District of California

had no opportunity to address." *Id.* Plaintiffs request that the Court either find these arguments waived for not being raised in the Motion or else permit them to file a sur-reply to address the arguments. *Id.* at 4; Dkt. 33-1 at 3; *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("[A] district court need not consider arguments raised for the first time in a reply brief.").

As to the first argument, the Court's decisions in both *Gao* (incorporated above) and *Varniab* adequately addressed and rejected the Government's argument that its discretion over actions attendant to adjudicating an application also confers discretion over the pace of adjudication. *See Gao*, 2026 WL 948665, at *3-4 (rejecting the argument that discretion over "the manner in which such adjudication takes place" confers discretion "over the pace of adjudicating applications" in light of "many cases" holding otherwise and 8 C.F.R. § 245.2(a)(5)(i) (citing *Varniab*, 2026 WL 485490, at *9 (collecting cases)). Accordingly, Plaintiffs' sur-reply on this point is denied as moot.

As to the second argument, the Court agrees that a theory based on 8 U.S.C. § 1571(b) appears nowhere in the Government's Motion or in Plaintiffs' opposition and, accordingly, is a new argument and is waived. The Court does not consider this argument, and so denies as moot Plaintiff's motion for leave to file a sur-reply on this point.

As to the third argument, as with the first argument, the Court's decision in *Gao* (incorporated above) adequately addressed and rejected the Government's argument that the lack of an "indefinite hold" moves this case closer to "visa retrogression" cases than cases like *Varniab*. *See, supra*, n. 3; *Gao*, 2026 WL 948665, at *4 (visa retrogression holds "find[] support in 8 C.F.R. § 245.2(a)(5)(ii), which provides that certain applications for adjustment of status 'shall not be approved until an immigrant visa number has been allocated by the Department of State.' By contrast, the very regulation that permits an adjudication hold where a visa number has not been allocated otherwise imposes, in general, a mandatory duty to act. 8 C.F.R. § 245.2(a)(5)(i) ('General. The applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial.').") (quoting *Varniab*, 2026 WL 485490, at *8). Accordingly, because the Court has already rejected this argument, Plaintiffs' sur-reply on this point is moot and is denied.

United States District Court
Northern District of California

9

Thus, Plaintiff's request for leave to file a sur-reply on the Government's newly-raised arguments relating to jurisdiction is **DENIED as moot**.[7]

### B.    Plaintiffs' Due Process Claim is Insufficiently Pleaded

Pursuant to Rule 12(b)(6), the Government argues that the Plaintiffs here have failed to state a Constitutional Due Process violation (the Government does not appear to challenge Plaintiffs' APA or mandamus claims on Rule 12(b)(6) grounds). Dkt. 14 at 15. The Government advances two reasons: first, that Plaintiffs must plead "a liberty or property interest" and have not done so; second, that the Government has discretion to deny an application altogether and if "the denial of an application for an adjustment of status cannot give rise to a due process claim," then "the time it takes for [USCIS] to exercise [its] discretion in processing such an application also cannot provide the basis for a due process claim." *Id.* (citing *Na Li v. Chertoff*, No. 07-cv-5634-JFW (AJWx), 2008 WL 11342782, at \*1 (C.D. Cal. Jan. 31, 2008)). The Court addresses the former argument and, because it finds that Plaintiffs' Due Process claims are insufficiently pleaded, need not address whether there can ever be a Due Process claim in the delay of adjudication of an I-485 application.

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The 'touchstone' of due process is protecting people against arbitrary government action, whether from 'denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Garas v. Noem*, No. 25-cv-01756-FWS (JDE), 2025 WL 3650184, at \*6 (C.D. Cal. Dec. 5, 2025) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). Plaintiffs do not contest that a valid interest is required, but claim they have alleged one. Dkt. 21 at 21-22, 23. The Court disagrees.

---

[7] *But see infra,* § III.C. (granting sur-reply as to the Government's newly-raised arguments relating to joinder).

10

United States District Court
Northern District of California

First, Plaintiffs argue that they have a Due Process interest in the "fundamental fairness" of their "administrative adjudication," which "encompasses the right to a decision," if not "to a favorable one." Dkt. 21 at 21. "However, the desire for 'fundamental fairness' in an administrative proceeding does not amount to a cognizable liberty or property interest that could support a procedural due process claim. On the contrary, the Ninth Circuit has held that '[a] mere expectation of receiving a benefit is not enough to create a protected interest.'" *Cost Saver Mgmt., LLC v. Napolitano*, No. 10-cv-2105-JST (CWX), 2011 WL 13119439, at *6 (C.D. Cal. June 7, 2011) (quoting *Roberts v. Spalding*, 783 F.2d 867, 870-71 (9th Cir. 1986)); *see also Baizakova v. Jaddou*, No. 24-cv-201-JFW (DFMx), 2024 WL 3063227, at *8 n.3 (C.D. Cal. June 14, 2024) (quoting *id.* in the context of delay, *i.e.*, "neglect and refusal to take action" on a plaintiff's pending asylum application).

Second, Plaintiffs claim several other general liberty and property interests in their lives that are impacted by the continuing delay in adjudicating their I-485 Applications. Plaintiffs claim that "the consequences of indefinite delay implicate independent, constitutionally-cognizable interests. Plaintiffs are prevented from sponsoring family members, restricted from government and military employment, denied in-state tuition eligibility, and forced to pay thousands of dollars in repeated EAD renewal fees." Dkt. 21 at 23 (emphasis added). "The Court sincerely empathizes with Plaintiff[s]. There is no doubt [they and their] famil[ies] are being held in limbo, waiting for a decision with extremely high stakes." *Yilmaz v. Jaddou*, 697 F. Supp. 3d 951, 962 (C.D. Cal. 2023). Even so, this does not transform what may be a valid APA or Mandamus claim into a Constitutional one. *Cf. id*. (rejecting a Due Process claim in the delay in adjudicating a plaintiff's asylum application). Plaintiffs have not pointed to any case in the pace-of-adjudication context where such general liberty interests support a Due Process claim, relying instead on the general principles set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Dkt. 21 at 23. However, the majority of the interests Plaintiffs point to do not rise to the level of something that the Government has *deprived* Plaintiffs of *as a result of the delay*. *Cf. Mathews*, 424 U.S. 319, 332-33 (a due process claim requires a showing that the defendant *deprived* the plaintiff of the liberty/property interest). For example, if Plaintiffs I-485 Applications were timely adjudicated

11

but denied, they would presumably also be "prevented from sponsoring family members, restricted from government and military employment, denied in-state tuition eligibility." *Contra* Dkt. 21 at 23.

The only possible exception is the EAD renewal fees, which, at least arguably, are incurred as a result of the Government's delay. However, even assuming *arguendo* that Plaintiffs' requirement to pay EAD renewal fees while their I-485 Applications are pending are a deprivation of property, Plaintiffs have failed to sufficiently allege a denial of fundamental procedural fairness. Even assuming that Plaintiffs have statutory rights under the APA and Mandamus Acts to a have the agency act on their application within a reasonable time, (*see supra*, § III.A), mere delay does not rise to the level of Constitutional unfairness. In *Garas v. Noem*, the district court was faced with a plaintiff who was a citizen of Egypt, had filed for asylum within the required statutory period, was fingerprinted and photographed, and then—despite several attempts—could not secure an interview for five years. 2025 WL 3650184, at *1. Although arising in the I-589 context (applications for those seeking asylum) rather than the I-485 context (where Plaintiffs, having already been approved for asylum, seek to adjust their status to that of permanent residents), the claim analyzed by the court was otherwise the same as the claims here: simple claims of unreasonable delay, without other allegations of policies or patterns of delay. *See id.* The court held that the Due Process "claim fails because 'the government's delay in scheduling or conducting immigration proceedings does not violate due process.'" *Id.* at *6.[8] Thus, the court explained, "courts routinely reject due process challenges to delays in adjudicating asylum applications." *Garas v. Noem*, No. 25-cv-01756-FWS (JDE), 2025 WL 3650184, at *6 (C.D. Cal. Dec. 5, 2025) (citing *Varol v. Radel*, 420 F. Supp. 3d 1089, 1099 (S.D. Cal. 2019) (collecting cases)). The Court finds this reasoning persuasive here.

Thus, even assuming that Plaintiffs' property interest in their EAD fees was cognizable,

---

[8] The court in *Garas* also analyzed the TRAC factors with regard to the APA and Mandamus claims and concluded that those claims had to be "dismissed without prejudice should later circumstances demonstrate an unreasonable delay." *Id.* at *4-5, *6. The Court notes that, in so disposing of the case, *Garas* implicitly accepted that it had subject matter jurisdiction to adjudicate such APA and Mandamus claims.

Plaintiffs have failed to adequately plead anything beyond mere delay such that would show fundamental "unfairness" in the process of adjudicating their I-485 Applications.[9, 10] Accordingly, the Court **GRANTS IN PART** the Government's Motion and **DISMISSES** Plaintiffs' Due Process claims **with leave to amend** if, in good faith, they can allege additional facts to support such a claim.

### C.    The Joinder of Plaintiffs Gerardo Huezo and Verduzco is Improper, But the Joinder of the Remaining Plaintiffs is Permissible

*Coughlin v. Rogers* provides guidance for the joinder analysis in immigration cases. *See* 130 F.3d 1348. "The first prong [of Rule 20(a)], the 'same transaction' requirement, refers to similarity in the factual background of a claim," while second prong concerns "common questions of law or fact" such as "what may constitute undue delay." *Id.* at 1350-51. Thus, whether joinder is proper depends heavily on the facts of the case and, "[e]ven though there may be different occurrences, joinder in a single case may be appropriate where the claims involve enough related operative facts." *MadKudu Inc.*, 2020 WL 5628968, at *4 (citing *Coughlin*, 130 F.3d at 1349-51). As the Government points out, in cases of unreasonable delay the ultimate determination of Plaintiffs claims will depend on the TRAC factors, (*see Telecomms. Research & Action Ctr. V. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984)), which will require considering:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this

---

[9] In so deciding, the Court does not find that Plaintiffs could *never* state a Due Process claim based on the delay of their I-485 Applications. The Government's argument to that effect overreaches. *See* Dkt. 14 at 15 (citing *Munoz v. Ashcroft*, 339 F.3d 950 (9th Cir. 2003). *Munoz* was decided in the removal context and only foreclosed claims for violations of "a substantive interest protected by the Due Process clause;" there remain "procedural due process … claims," for example to vindicate the "due process right to a full and fair hearing." *Fernandez v. Gonzales*, 439 F.3d 592, 602 (9th Cir. 2006) (declining to extend *Munoz*), *overruling on other grounds recognized, Aviles-Contreras v. Bondi*, No. 25-1425, 2026 WL 413189, at *2 (9th Cir. Feb. 13, 2026).

[10] Plaintiff's FAC does allege that "judicial intervention" is "necessary" because of the USCIS's removal, in March, 2019, of "the process by which individuals could schedule an appointment to speak with a USCIS officer in person at a local office," and replacement of the process with a "phone call" and "stand by" process such that "the agency no longer offering functional internal mechanisms for redress in delayed matters." Dkt. 9, ¶¶ 27-29. These alleged facts are not tied in any way, however, to Plaintiffs' Due Process claim.

rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health or welfare is at stake; (4) … the effect of expediting delayed action on agency activities of a higher or competing priority; (5) … the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Varniab*, 2026 WL 485490, at \*12.

Applying the joinder test, the *Coughlin* Court found joinder to be improper where the 49 plaintiffs had filed "a range of different applications with different legal issues, factual issues, standards, and procedures" and "did not allege a systematic policy or pattern of delay." *Coughlin*, 130 F.3d at 1351. Here, the facts are similar in some ways and different in others.

As Plaintiffs point out in opposition, here, unlike in *Coughlin*, they have all filed I-485 Applications based on their asylee status. *See* Dkt. 14 at 8. Yet the Plaintiffs hail from different countries of origin, some reside in different states and localities currently, and some filed their applications on different days. Dkt. 14 at 8 (summarizing information from Dkt. 9, ¶¶ 1-19). As the Government points out in reply, these differences will affect the analysis of the TRAC factors. *See* Dkt. 31 at 2, 9-10. The Court agrees: Some TRAC factors will be common because the Plaintiffs' I-485 Applications arise in the context of the same statutory provisions (governing applications based on asylee status). Other factors, in particular the length of delay of each Plaintiff and the specific harm to each individual, may differ as between Plaintiffs.

However, Plaintiffs argue in their administrative motion and proposed sur-reply that the Government's TRAC-factor argument, and the specific reliance on "different field offices, in different districts and regions, with various backlogs," are new arguments that are either waived or merit a sur-reply. *See* Dkt. 33 at 2-3; 33-1 at 3. The Court agrees. The TRAC factors are naturally implicated by the *Coughlin* joinder analysis when applied to pace-of-adjudication claims and certainly could have been raised by the Government in its Motion. The reliance on different backlogs is new but related to the Government's reliance (in its original Motion) on different field offices. Accordingly, in its discretion and to ensure Plaintiffs have a fair opportunity to respond, the Court **GRANTS** Plaintiffs' request to respond to these arguments on the merits. The Court thus considers the points raised at pages 9-11 of the sur-reply. Dkt. 33-1.

14

In their brief, Plaintiffs provide data to support that the delay they point to is not just individual delay on individual applications. Rather, based on published USCIS quarterly statistics, Plaintiffs point to a pattern and attribute the delay to some "reason" that "every backlog stopped moving at the same time" in the third quarter of 2025. Dkt. 33-1 at 9; Dkt. 33 at 4; Dkt. 33-2 (relevant field offices highlighted) (data available at https://www.uscis.gov/sites/default/files/document/data/i485_performancedata_fy2025_q1.xlsx, …q2.xlsx, …q3.xlsx and q4.xlsx). Plaintiffs argue that "[t]he reports show that humanitarian I-485 approvals collapsed simultaneously at every field office relevant to this litigation during the same period, regardless of geographic location or local caseload."

Overall, the *prima facie* length of delay alleged for each Plaintiffs' application and the difference in Plaintiffs' residence (such that they would report to a number of different USCIS field office) weigh in favor of severance. However, the data provided by Plaintiffs in sur-reply are significant and cast the allegations in a different light. Specifically, if all of the Plaintiffs I-485 Applications have been delayed principally by the unexplained "collapse" in adjudication of applications in the third quarter of 2025, then Plaintiffs allegations sound in the sort of "systematic … pattern of delay" recognized in *Coughlin* as an important, common fact. *Coughlin*, 130 F.3d at 1351. The common pattern of delay also changes the efficiencies involved in the case, as many of the Plaintiffs claims of unreasonable delay will depend upon discovery showing why the "collapse" in USCIS approvals occurred and whether the delay for these applications was thus reasonable. Thus, although the different application dates, field offices and backlogs are relevant, for the majority of the Plaintiffs in this case, these factors are dwarfed by an apparent common reason for delay.

The only exceptions are Plaintiffs Gerardo Huezo and Verduzco. Their applications were filed far earlier than any other application in this case, and have been pending for 65 months and 57 months, respectively. Accordingly, although the same 2025 "collapse" may have played some role in the delay of these applications, they are likely to have additional and substantively different reasons for delay that do not implicate the 2025 statistics.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's

United States District Court
Northern District of California

request to sever the Plaintiffs. **Plaintiffs Gerardo Huezo and Verduzco are SEVERRED** from this action, although they may proceed in a joint action as between the two of them. As the first named Plaintiff, the Court retains the action as filed by Plaintiff Wang, along with the other Plaintiffs whose claims are properly joined.

**D.     Venue is Not Improper in Light of the Joinder Analysis**

The Court's venue analysis is, accordingly, brief. The Parties do not contest that three Plaintiffs reside in this District: Wang, Verduzco, and Marques. *See* Dkt. 14 at 20-21; Dkt. 21 at 29. All of the remaining out-of-district Plaintiffs, except for Plaintiff Gerardo Huezo, are properly joined to Wang and, accordingly, venue is proper in this District. *See MadKudu Inc. v. U.S. Citizenship & Immigr. Servs.*, 2020 WL 5628968, at *8 (under 28 U.S.C. 1391(e)(1), "venue is proper in a multi-plaintiff case if *any* plaintiff resides in the District."). Gerardo Huezo is not properly joined to Wang, but he is properly joined to Plaintiff Verduzco, who is a resident of this District. Thus, the Court also will not dismiss Plaintiff Gerardo Huezo's claim.

Accordingly, the Court **DENIES** the Government's request to dismiss any Plaintiffs for improper venue.

**IV.     CONCLUSION**

For the foregoing reasons, the Government's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The Court finds that it has subject matter jurisdiction to hear this case but **DISMISSES** all Plaintiffs' Due Process claims **with leave to amend**.

Moreover, Plaintiffs' Verduzco and Gerardo Huezo's case is **SEVERED** from this case. The Clerk of Court is directed to sever their claims into a distinct action by opening a new case with a new case number and reassigning the new case to a new magistrate judge.

Plaintiffs Wang, Marques, Rodriguez, Shandro, Bykova, Zhang, Bobrova, Luchita, the Klepiks, A.K. and F.K., Ortalejo Sanchez, Hernandez Roman, Hagos, P.G. and Rovira may amend their Complaint **no later than April 29, 2026**. Plaintiffs' Verduzco and Gerardo Huezo may amend the complaint in the new action **within 14 days** after the case is opened.

The Government's answer shall be due **14 days** after Plaintiffs' amended complaint(s) are filed or by **May 6, 2026**, whichever is later.

**SO ORDERED**.

Dated: April 15, 2026

SUSAN VAN KEULEN
United States Magistrate Judge